## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                              CRIMINAL ACTION

VERSUS                                               13-146-SDD-SCR-1

CHRISTOPHER L. BROWN

## RULING

This matter is before the Court on the Defendant's *Motion to Vacate under 28 U.S.C. 2255*.[1]  The Government has filed an *Opposition*[2] to this motion, to which the Defendant has filed *Replies*.[3]  The Defendant contends that he was denied effective assistance of counsel which caused him to enter a guilty plea that was not knowing and voluntary.   Specifically, Defendant contends his counsel misrepresented the consequences of the plea agreement and the possible sentence he was facing.  The Defendant also argues that he was a victim of prosecutorial misconduct, an issue he claims his counsel failed to properly investigate and preserve for appeal.

## I.    BACKGROUND FACTS

On October 31, 2013, the Defendant, Christopher L. Brown, was charged by Indictment with conspiracy to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 (Count 1); possession of firearms in furtherance

---

[1] Rec. Doc. No. 96.
[2] Rec. Doc. No. 103.
[3] Rec. Doc. Nos. 105, 107, 113, 114, & 131.
30094

of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(Count 2); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 3). On January 14, 2014, the Defendant pled guilty to these charges pursuant to a written plea agreement.[4] On June 4, 2014, the Defendant was sentenced to 210 months of imprisonment on Counts 1 and 3 to run concurrently, a consecutive sentence of 60 months on Count 2, resulting in a total of 270 months imprisonment.[5]

During the Re-arraignment, the Defendant was thoroughly questioned by the Court concerning the knowing and voluntary nature of his guilty pleas.[6] The Defendant was sworn before answering any questions, and he stated under oath that he understood the maximum possible penalties. He also stated that no promises had been made to him regarding his sentence.[7] The Defendant acknowledged that he had read and discussed the terms of the plea agreement with his attorney before he signed the plea agreement.[8] The Defendant further acknowledged that he understood the appeal rights that he was waiving which were thoroughly explained by the Court.[9] The Defendant assured the Court that he had not been threatened or coerced into signing the plea agreement, and that he understood that no promises were made to him to induce his plea outside those promises contained in the plea agreement.[10] The Defendant acknowledged that he was pleading guilty because he was, in fact, guilty of the crimes charged, and the Court accepted the Defendant's guilty pleas.[11]

---

[4] Rec. Doc. No. 29.
[5] Rec. Doc. No. 72. The Defendant was also sentenced to five years of supervised release.
[6] *See* Rec. Doc. No. 81, Transcript of Re-Arraignment, pp. 2-30.
[7] *Id.* at pp. 7-9, 24-25.
[8] *Id.* at p. 4, 22.
[9] *Id.* at pp. 23-24.
[10] *Id.*at pp. 27-28.
[11] *Id.* at pp. 29-30.
30094

A revised Presentence Investigation Report ("PSR") in this case was issued on May 15, 2014.[12]  Under U.S.S.G. § 2D1.1(c)(4), the probation officer assigned a base offense level of 32 for the violation of 21 U.S.C. § 846.[13]  Because the Defendant made a threat to use violence by insisting that the men in the stash house would have to be killed, two levels were added to the base offense level.[14]  Another two levels were added because the Defendant was found to be an organizer in the criminal activity.[15]  The probation officer assigned a base offense level of 20 pursuant to U.S.S.G. § 2D1.1 (c)(4) for the violation of 18 U.S.C. § 922(g).[16]  Thus, the Defendant had an offense level of 36 because it was the highest offense level in the group.[17]  After receiving a three level reduction for acceptance of responsibility, the Defendant's had a total offense level of 33.[18]

The Defendant received 23 criminal history points resulting in a criminal history category of VI based on the Defendant's prior criminal convictions for:  illegal carrying of weapons; simply burglary, simple assault, and criminal damage to property; possession of cocaine; felon in possession of a firearm; unauthorized use of a movable; improper telephone communications, possession of marijuana; discharge of a firearm in city limits, simple criminal damage to property and aggravated assault; battery on a police officer; resisting an officer and public drinking in a motor vehicle; and possession of drug paraphernalia.[19]  Based on a total offense level of 33 and a criminal history category of

---

[12] Rec. Doc. No. 63.
[13] *Id.,* ¶ 24.
[14] *Id.,* ¶ 25.
[15] *Id.,* ¶ 27.
[16] *Id.,* ¶ 24.
[17] *Id.,* ¶ 37.
[18] *Id.,* ¶¶ 40-44.
[19] *Id.,* ¶¶ 52-63, 65.
30094

VI, the Defendant's guideline range was 235-293 months.[20]  Prior to sentencing, counsel for the Defendant submitted a sentencing memorandum seeking a variant sentence and a two-level reduction based on the United States Sentencing Commission's vote to reduce the base offense level for drugs by two levels.[21]

The Defendant made no objections to the PSR prior to or during the sentencing hearing.[22]  At the sentencing hearing, the Court applied the two-level reduction requested by the Defendant's sentencing memorandum in accordance with the drug guideline reduction[23] and also granted the Government's U.S.S.G. § 5K1.1 motion to reduce the Defendant's guideline range for the substantial assistance provided by the Defendant, resulting in another one-level reduction in the guideline range.[24]  Defense counsel argued that the Court should not attribute the 12 kilograms of cocaine to the Defendant because it was based on an arbitrary number provided by the undercover agent involved in the operation.[25]  Thus, the final total offense level was 30 with a criminal history category of VI, resulting in a guideline range of 168-210 months.[26]

The Court discussed the 18 U.S.C. § 3553(a) factors and discussed the reasons for the sentence imposed.[27]   The Defendant subsequently appealed his sentence;[28]

---

[20] *Id.*, ¶ 106.
[21] Rec. Doc. No. 67.
[22] Rec. Doc. No. 80, Transcript of Sentencing Hearing, pp. 10-15; Rec. Doc. No. 64.
[23] Rec. Doc. No. 80, pp. 10-15.
[24] *Id.* at pp. 14-15. Although the Government recommended a two-level reduction, the Court granted only a one-level reduction for the reasons given.  Counsel for the Defendant objected to this decision.  *Id.* at p. 20.
[25] *Id.* at pp. 15-16.
[26] *Id.* at p. 21.
[27] *Id.* at pp. 19-28.
[28] Rec. Doc. No. 71.
30094

however, the Fifth Circuit affirmed the decision of the Court.[29]   Shortly thereafter, this *Motion to Vacate* followed.

### A.  Defendant's Plea was Knowing and Voluntary

Although the Defendant stated to the Court under oath at his Re-arraignment that he was pleased with his counsel and had not been coerced in any way to plead guilty,[30] he now alleges that his plea was the result of "fraud in the inducement from incompetent counsel" who "misadvised him and erroneously promised him a sentence to induce him to plead guilty."[31]

For sentencing purposes, "the Fifth Circuit has found that 'the defendant must be advised of and understand the consequences of the plea' for a guilty plea to be knowing and voluntary.[32]   A defendant is aware of the consequences of a guilty plea when he understands the worst possible outcome of the plea agreement and still chooses to plead guilty."[33]   Moreover, "as long as the defendant is advised of the maximum penalty which can be imposed, an attorney's erroneous prediction is insufficient basis to render a guilty plea unknowing or involuntary."[34]

In this case, the Defendant contends that his guilty pleas and waiver of rights were made involuntarily and without full knowledge of the consequences.[35]   Essentially, the Defendant contends that he only pled guilty because his attorney advised that he had no

---

[29] Rec. Doc. No. 95.
[30] Rec. Doc. No. 81, pp. 29-30.
[31] Rec. Doc. No. 96-1, pp. 12, 18.
[32] *United States v. Ray*, No. 11-79, 2015 WL 7451194 at *3 (E.D. La. Nov. 23, 2015)(quoting *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990)(citing *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982))).
[33] *Id.*, citing *United States v. McKnight*, 570 F.3d 641, 648 (5th Cir. 2009).
[34] *United States v. Smith*, No. 11-0152, 2015 WL 6438874, at *5 (W.D. La. Sep. 14, 2015)(citing *United States v. Pearson*, 910 F.2d 221 (5th Cir.1990); *United States v. Gracia*, 983 F.2d 625, 629 (5th Cir.1993)).
[35] Rec. Doc. No. 96-1, p. 20.
30094

defense and promised him a sentence of approximately 100 months with the assurance that the drug quantity involved would not affect his sentence.[36]  The Defendant now claims that he would have insisted on going to trial if he knew the Government would "manipulate his sentence with fabricated drug amounts."[37]  These claims, however, are directly contradicted by the Defendant's testimony at his Re-arraignment hearing.

Notably, "[p]risoners challenging guilty pleas on collateral review must overcome a 'strong presumption of verity' accorded 'solemn declarations' made in open court.[38]  Prisoners must also overcome the presumption of regularity and 'great weight' accorded court documents."[39]  Thus, the Court finds that the Defendant's signed plea agreement and statements made under oath preclude the challenges he now brings.

First, the Court must note that, regardless of any alleged predicted sentence by defense counsel, the Defendant explicitly acknowledged under oath that his actual sentence could be different from any predictions given by his attorney.[40]  The Defendant also acknowledged in his signed plea agreement that the agreement contained no promises or assurances as to what his sentence would be.[41]  The transcript of the arraignment hearing reflects that the Court advised the Defendant of the potential minimum and maximum penalties, including terms of imprisonment, for each count to which the Defendant was pleading guilty.  At no time did the Defendant feign surprise or

---

[36] *Id.* at pp. 13, 18-20.
[37] *Id.* at p. 20.
[38] *United States v. Dantzler*, No. 10-0024-01, 2012 WL 6086869, at * 3 (W.D. La. Dec. 6, 2012)(quoting *Blackledge v. Allison*, 431 U.S. 63, 73–4 (1977)).
[39] *Id.* (quoting *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir.1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir.1986) (holding that court records are "accorded great weight")).
[40] Rec. Doc. No. 81, p. 25.
[41] Plea Agreement, Rec. Doc. No. 29, p. 10, ¶ 14.
30094

ask questions of the Court as to these potential penalties. The record is clear that the Defendant was fully apprised that he would receive at least 180 months imprisonment despite any predictions made by his counsel.

Second, the Defendant now claims that his plea was not knowing and voluntary because he did not realize the drug quantity that would be attributed to him or that this quantity would affect his sentence. This claim is also belied by the record in this case. The arraignment hearing transcript reflects that the Court outlined the offenses, the facts underlying those offenses, and the potential sentences the Defendant faced for each offense. The Defendant acknowledged this information and further agreed to the factual basis supporting the offense conduct for the charges brought against him. The Defendant specifically entered a plea of "guilty" to the charge "conspiracy to possess with the intent to distribute five kilograms or more of cocaine."[42] Moreover, the factual basis to which the Defendant stipulated addressed the quantity of drugs attributed to the Defendant.[43] The Defendant reviewed the factual basis in open court, testified that he had previously reviewed it with his attorney, declared that he had no changes to make to it, and agreed with the statements contained therein.[44]

The record demonstrates that the Defendant was fully informed of the charges to which he was pleading guilty, the potential maximum penalties for those charges, the rights he was waiving by pleading guilty, and the facts and drug quantities supporting his

---

[42] Rec. Doc. No. 81, p. 29.
[43] Plea Agreement, Rec. Doc. No. 29, p. 8, ¶ 12:  "The Agent told Brown that there would be anywhere from 12-25 kilos of cocaine in the stash house for Brown and his associates to take."
[44] Rec. Doc. No. 81, p. 19.

30094

guilty pleas.  Therefore, the argument that the Defendant did not enter a knowing and voluntary plea to the charges is wholly unsupported and without merit.

### B.  Ineffective Assistance of Counsel

The Defendant also moves on the grounds that he had ineffective assistance of counsel because his attorney failed to understand and advise him of the full consequences of the plea agreement and because the government unlawfully "sought out, targeted, and enticed him to commit a crime," and his attorney failed to take steps to preserve this issue for appeal by filing a motion to dismiss the indictment based on the Government's conduct.[45]

To obtain relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."[46]  To prove deficient performance the petitioner must demonstrate that counsel's actions "fell below an objective standard of reasonableness."[47]  To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,"[48] and that "counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[49]

The same test applies when a petitioner alleges ineffective assistance of counsel in the context of a guilty plea.[50]  To satisfy the second prong of this test, the petitioner

---

[45] *See* Rec. Doc. No. 96-1, pp. 12-13, & 18.
[46] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[47] *Id.*, at 688.
[48] *Id.*, at 694.
[49] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).
[50] *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).
30094

must show that "there is reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[51]  To meet the prejudice prong, the defendant must affirmatively prove, and not merely allege, prejudice.[52]

A defendant must satisfy both prongs of the *Strickland* test to succeed on an ineffective assistance of counsel claim.[53]  A court is not required to address these prongs in any particular order.  If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed."[54]

If a defendant enters a guilty plea with the advice of counsel, the voluntariness of the plea turns "on whether [the] advice was within the range of competence demanded of attorneys in criminal cases."[55]  To succeed on a claim that his plea was involuntary due to counsel's representations concerning the sentence he would receive, a defendant must show that his plea was motivated by an "actual promise."[56]  To prevail on the theory of an actual promise, the petitioner must prove: (1) the exact terms of the promise; (2) exactly when, where, and by whom the promise was made; and (3) "the precise identity of an eyewitness to the promise."[57]

Furthermore, "[a] guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence.  In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee

---

[51] *Id.* at 59.
[52] *Bonvillain*, 780 at 1253.
[53] *See Strickland*, 466 U.S. at 697.
[54] *Id.*
[55] *McMann v. Richardson*, 397 U.S. 759, 771 (1970).
[56] *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986) (emphasis omitted).
[57] *Id.* (internal citations omitted).

30094

by the court, the prosecutor or defense counsel, the guilty plea stands."[58] As long as the defendant understood the term of imprisonment to which he might possibly be sentenced, he was aware of the plea's consequences.[59] However, "[b]y grossly underestimating [the defendant's] sentencing exposure ..., [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable."[60]

In the present case, there is no credible evidence that the Defendant was in fact promised that he would receive a sentence of 100 months; nor is there any credible evidence that the Defendant's plea was motivated by any "actual promise." This is particularly true in light of the sworn statements by the Defendant cited previously in this opinion acknowledging the maximum possible penalties associated with his charges and the fact that anything counsel might have predicted was just a prediction. Further, Defendant was advised that the Court could deviate up or down from anything predicted by counsel. The Defendant unequivocally indicated his understanding on all these points. Under oath, he also stated that he understood the terms of his plea agreement and that no other promises had been made to him by anyone.[61]

The record in this case also demonstrates that the Defendant was fully satisfied with the representation of counsel. When questioned by the Court during his Re-

---

[58] *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002), *abrogation on other grounds recognized by United States v. Grammas*, 376 F.3d 433, 437–38 (5th Cir. 2004).

[59] *United States v. Santa Lucia*, 991 F.2d 179, 180 (5th Cir.1993); *United States v. Smith*, No. 04-30093, 143 Fed. Appx. 559 (5th Cir. 2005) (unpublished) ("Smith ... asserts that if counsel had informed him that the government was seeking to enhance his sentence as a career offender, he would not have pleaded guilty. As long as the defendant understood the length of time he might possibly receive, however, he was aware of the plea's consequences.").

[60] *Grammas*, 376 F.3d at 436–37 (internal quotation marks and citations omitted).

[61] Rec. Doc. No. 81, p. 25; Rec. Doc. No. 29, p. 10.
30094

arraignment hearing, the Defendant stated under oath that he was fully satisfied with the advice of his counsel and that he had no complaints about his representation.[62]  Despite a letter sent to the Court by the Defendant in the interim, the Court confirmed with the Defendant at his sentencing hearing that he had no problems with his counsel.  The Defendant not only apologized for sending the letter and stated that he was "kind of overreacting a little bit," he also testified that his counsel had done "what he was suppose[d] to do."[63]

With respect to Defendant's claim that his counsel was ineffective in failing to file a motion to dismiss the indictment based on prosecutorial misconduct, this claim is likewise without merit.  First, for the myriad of reasons set forth above, the Defendant waived any such appellate preservation of this right by entering into the plea agreement with the United States, which the Defendant understood as demonstrated by the record.  As set forth above, the Defendant acknowledged these waivers both in his signed plea agreement and in his colloquy with the Court.  Second, the Defendant has also failed to show any prejudice by counsel's failure to preserve this issue for appeal.  The Defendant has utterly failed to show that he had any legally cognizable argument that would have prevailed on appeal as required by *Strickland*.  As the Government has pointed out, the Defendant did, in fact, appeal this issue, and the Fifth Circuit rejected the Defendant's arguments, finding that the Defendant had failed to identify any Fifth Circuit precedent to support his contention that his drug quantity attribution and resulting sentence were a miscarriage of justice.[64]

---

[62] Rec. Doc. No. 81, p. 29.
[63] Rec. Doc. No. 80, p. 8.
[64] *United States v. Brown*, No. 19-30558, 597 Fed. Appx. 269, 2015 WL 1119696 (5th Cir. Mar. 13, 2015).
30094

II.    **CONCLUSION**

For the reasons set forth above, the Court finds that the Defendant's *Motion to Vacate under 28 U.S.C. 2255*[65] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>February 3, 2016</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[65] Rec. Doc. No. 96.

30094